**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) Linh Tran Stephens, sui juris, natural living breathing woman with a living soul and Holy Spirit YAHUAH<br>*Plaintiff,*<br>Vs.<br>(1) CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS),<br>*and* (2) CHARLES SCHWAB AND CO., INC., (3) Cierra Freeman, in individual capacity and official capacity as court-appointed attorney for child-support enforcement, (4) Mary Johnmeyer, in individual capacity and in official capacity as legal counsel of Charles Schwab, (5) Renee Banks, in individual capacity and official capacity as CSS Director, (6) Jason Hoenshell, in individual capacity and in official capacity as Oklahoma FIDM Coordinator, (7) Emmalene Stringer, in individual capacity and in official capacity as State's attorney for CSS, (8) DOES #1-10 known but unidentified CSS employees, (9) DOES #11-20 known but unidentified Charles Schwab and Co., Inc., employees<br>*Defendants.* | Case No.: **24-CV-216-JDR-CDL**<br>Judge: John D. Russell (as plaintiff has objected to any magistrates and any other alternatives deviating from article iii constitutional judges in plaintiff's original complaint)<br>ORIGINAL CLAIMS filed on 05/08/2024 |

---

**MOTION TO DISQUALIFY OPPOSING COUNSEL DUE TO CONCURRENT CONFLICT OF INTEREST AND FOR RULE 11 SANCTIONS, AND MEMORANDUM OF LAW IN SUPPORT**

---

COMES NOW the Claimant, natural living woman Linh Tran Stephens, sui juris, appearing in propria persona, not pro se, and respectfully gives notice and moves this Honorable Court for an Order disqualifying JOHN K.F. LANGFORD from representing multiple Defendants, specifically CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES, JASON HOENSHELL, and EMMALENE STRINGER in this matter. Additionally, this motion seeks to disqualify TARA A. LACLAIR and JENNIFER N. LAMIRAND from representing both CHARLES SCHWAB

---

AND CO., INC. and MARY JOHNMEYER. This Motion is brought forth in truth and

equity and is based upon the following grounds:

TABLE OF CONTENTS:

MOTION TO DISQUALIFY OPPOSING COUNSEL DUE TO CONCURRENT
CONFLICT OF INTEREST AND FOR RULE 11 SANCTIONS, AND..............................1

    MEMORANDUM OF LAW IN SUPPORT.....................................................................1

I. INTRODUCTION..................................................................................................... 2

II. FACTUAL BACKGROUND.....................................................................................3

III. MEMORANDUM OF LAW..................................................................................... 4

    A. Legal Standard for Disqualification................................................................. 4

    B. Rule 1.7 Prohibits Concurrent Conflicts of Interest..........................................5

    C. Supreme Court Precedent Supports Disqualification............................................. 6

    D. The Current Representation Creates an Impermissible Conflict.........................6

    E. Waiver Is Insufficient to Cure This Conflict..................................................... 9

    F. Disqualification Serves the Public Interest.......................................................10

    G. Precedent in the Northern District of Oklahoma............................................. 11

    H. Application of Legal Standards to the Present Case..............................................11

    I. Additional Legal Authority Supporting Disqualification........................................ 13

IV. CONCLUSION AND RELIEF SOUGHT................................................................ 15

V. REQUEST FOR RULE 11 SANCTIONS.................................................................. 16

    A. Legal Authority for Sanctions........................................................................ 16

    B. Basis for Rule 11 Sanctions in This Case......................................................... 17

    C. Appropriate Sanctions.................................................................................... 17

Avouchment / Verification...................................................................................... 18

Notary as JURAT CERTIFICATE............................................................................19

CERTIFICATE OF SERVICE...................................................................................20

## I. INTRODUCTION

i, Linh Tran Stephens, a living woman, sovereign by right of creation, bring this motion

to disqualify JOHN K.F. LANGFORD from the concurrent representation of CHILD

SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES ("CSS

of OKDHS") and its individual employees, JASON HOENSHELL and EMMALENE

STRINGER. Additionally, i seek to disqualify TARA A. LACLAIR and JENNIFER N.

LAMIRAND from representing both CHARLES SCHWAB AND CO., INC. and its

employee MARY JOHNMEYER. The current representation arrangements create impermissible concurrent conflicts of interest that violate Rule 1.7 of the Oklahoma Rules of Professional Conduct, as adopted by this Court through Local Rule 83.6(b), Universal Commercial Code § 1-103 and § 1-308, fundamental principles of equity, and undermine the integrity of these proceedings. These conflicts jeopardize my God-given and constitutionally protected right to a fair adjudication of the claims and interfere with the truth-seeking function inherent in these proceedings.

## II. FACTUAL BACKGROUND

This case concerns actions taken by CSS of OKDHS and Charles Schwab and Co., Inc. against my property and rights. Specifically, this case concerns constitutional violations stemming from improper child support enforcement actions that systematically targeted both my financial resources and personal liberty. These actions resulted in the unlawful seizure of my financial assets and ultimately my physical detention, all without affording me the procedural safeguards guaranteed by due process. Such governmental overreach directly infringes upon the fundamental rights to liberty, property, and pursuit of happiness expressly protected by the Constitution and recognized as unalienable to all men and women.

Notice is hereby given that JOHN K.F. LANGFORD currently represents multiple Defendants, including CSS of OKDHS as the agency, JASON HOENSHELL in his individual and official capacity as Oklahoma FIDM Coordinator, and EMMALENE STRINGER in her individual and official capacity as State's attorney for CSS. Similarly, TARA A. LACLAIR and JENNIFER N. LAMIRAND represent both CHARLES SCHWAB AND CO., INC. and MARY JOHNMEYER in her individual and official capacity as legal

counsel of Charles Schwab.

The interests of these government agencies and financial institutions versus their individual employees are fundamentally separate and distinct, creating significant potential for conflicting testimony, divergent defenses, and opposing interests under trust law, commercial law, and equity principles. This is particularly evident when considering that individual employees may seek to justify their actions as following agency protocol, while the agencies may attempt to attribute any improper actions to individual employee conduct.

### III. MEMORANDUM OF LAW

**A. Legal Standard for Disqualification**

This Honorable Court has the inherent authority, duty and obligation under both ecclesiastical principles and American Common Law to disqualify counsel to protect the integrity of the proceedings and ensure compliance with ethical standards and principles of equity. "Federal courts have an inherent power to disqualify an attorney from a case brought before it." *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir. 1980). The Northern District of Oklahoma has adopted the Oklahoma Rules of Professional Conduct through Local Rule 83.6(b), which govern attorney conduct in this Court. Furthermore, under UCC § 1-103, the principles of common law and equity remain in full force and effect unless specifically displaced.

The Supreme Court of the United States has recognized the importance of enforcing ethical rules in litigation, stating that courts have a sacred responsibility "to maintain public confidence in the legal profession." *Wheat v. United States*, 486 U.S. 153, 160 (1988). Moreover, the Court has emphasized that "Federal courts have an

independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id. This principle extends to civil litigation as well. See *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712, 718 (D. Conn. 1991). These principles are consistent with both ecclesiastical law and the organic Constitution's guarantee of due process.

**B. Rule 1.7 Prohibits Concurrent Conflicts of Interest**

Rule 1.7 of the Oklahoma Rules of Professional Conduct provides:

**(a)** Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**(b)** Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

The concurrent representation of the <u>Employer and Employee Defendants creates a</u> <u>disqualifying conflict under Rule 1.7</u>. While the interests of these defendants may appear aligned in some respects, they are fundamentally divergent in others, creating a "significant risk" that the representation will be "materially limited" by counsel's responsibilities to the other clients.

## C. Supreme Court Precedent Supports Disqualification

The Supreme Court's decision in *Wheat v. United States*, 486 U.S. 153 (1988), while addressing criminal matters, established principles that apply to civil litigation as well. The Court held that trial courts have <u>substantial latitude to refuse proposed</u> <u>waivers of conflicts of interest where there is a serious potential for conflict</u>. Id. at 163. The Court explained:

- "The District Court must recognize a presumption in favor of [a party's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Id. at 164.

- In *Holloway v. Arkansas*, 435 U.S. 475 (1978), the Supreme Court addressed the **dangers of joint representation**, noting that "in a case of joint representation of conflicting interests the evil... is in what the advocate finds himself compelled to refrain from doing... [making it] virtually impossible for an appellate court to assess the impact of a conflict." Id. at 490-91. This concern applies equally to civil litigation.

## D. The Current Representation Creates an Impermissible Conflict

The concurrent representation of CSS of OKDHS and its employees (JASON HOENSHELL and EMMALENE STRINGER) by JOHN K.F. LANGFORD, as well as the

concurrent representation of CHARLES SCHWAB AND CO., INC. and MARY

JOHNMEYER by TARA A. LACLAIR and JENNIFER N. LAMIRAND presents several

specific conflicts that violate both equity principles and commercial law:

1.  **Divergent Testimony and Defenses**: The individual living men and women who are

    employees possess unique knowledge about the events at issue and maintain

    personal interests in characterizing actions as those of the corporate or government

    entity rather than their own individual conduct, or vice versa. For example, JASON

    HOENSHELL as FIDM Coordinator may claim he was following agency protocol,

    while CSS of OKDHS may claim he acted outside standard procedures. Similarly,

    MARY JOHNMEYER may claim she was following Charles Schwab's policies, while

    Charles Schwab may claim she acted beyond her authority. These employer entities,

    conversely, may seek to place blame on individual employees to limit corporate or

    governmental liability, creating a conflict in both **contract** law and **tort** law principles.

2.  **Cross-Examination Limitations**: Effective cross-examination of employee

    witnesses is *severely* compromised when they share counsel with the employer

    entity. Attorney JOHN K.F. LANGFORD cannot vigorously cross-examine JASON

    HOENSHELL or EMMALENE STRINGER if their testimony might benefit one client

    while harming another. Similarly, attorneys TARA A. LACLAIR and JENNIFER N.

    LAMIRAND face the same conflict with CHARLES SCHWAB AND CO., INC. and

    MARY JOHNMEYER. As the Ninth Circuit noted in *Moretti v. Weyerhaeuser Co.,*

    574 F.2d 477, 479 (9th Cir. 1978), a lawyer representing multiple defendants may be

    "inhibited from vigorously cross-examining witnesses whose testimony is favorable

    to one defendant but damaging to another." This violates the ecclesiastical principle

of seeking truth in all matters.

3. **Coordinated Testimony Concerns**: Joint representation facilitates coordination of testimony among witnesses, potentially compromising the truth-seeking function of the litigation process and obstructing discovery of facts. This is particularly concerning when government entities and their employees have aligned interests to prevent full disclosure of improper child support enforcement actions, as a form of colluding and R.I.C.O.--such acts constitute collusion and demonstrate a pattern of racketeering, which is a central claim within this case. As noted in Wheat, "joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." 486 U.S. at 160. Such coordination violates UCC § 1-304 obligation of good faith.

4. **Settlement Conflicts**: Different Defendants may have different settlement postures or financial capabilities, yet joint representation makes independent settlement evaluation impossible. For example, CSS of OKDHS as a state agency has different settlement authority and immunity considerations than individual employees like JASON HOENSHELL or EMMALENE STRINGER who may face personal liability. Similarly, CHARLES SCHWAB AND CO., INC. as a corporation has different settlement interests than MARY JOHNMEYER as an individual. This creates an unconscionable contract situation under **UCC § 2-302**.

5. **Confidentiality Concerns**: Information obtained from one defendant may be material to the defense of another, creating impossible ethical dilemmas for counsel regarding the use of confidential information, which violates trust law principles and fiduciary obligations. For example, JOHN K.F. LANGFORD may obtain confidential

---

information from JASON HOENSHELL about improper procedures that would be beneficial to CSS of OKDHS's defense but harmful to HOENSHELL personally, creating an irresolvable conflict.

6. **Separation of Legal Personalities**: Under trust law and commercial law, the corporate/government entity and the individual living men and women are separate legal personalities with distinct rights and obligations that cannot be properly represented by the same counsel, creating an inherent conflict. CSS of OKDHS and CHARLES SCHWAB AND CO., INC. are legal fictions, while JASON HOENSHELL, EMMALENE STRINGER, and MARY JOHNMEYER are natural persons with fundamental, unalienable rights that may conflict with their employers' interests.

The Northern District of Oklahoma has previously recognized these concerns in similar contexts. In United States v. Ables, 2014 WL 2589415 (N.D. Okla. June 10, 2014), the court noted that "representation of multiple defendants with potentially conflicting interests compromises counsel's ability to provide undivided loyalty to each client." Similarly, in Wilder v. Okla. Dep't of Corr., No. 18-CV-0343-CVE-JFJ, 2019 WL 1375387, at *3 (N.D. Okla. Mar. 27, 2019), the court emphasized that "the right to conflict-free representation is a critical component of the Sixth Amendment guarantee of effective assistance of counsel" and that this principle applies with particular force in cases where fundamental rights are at stake.

## E. Waiver Is Insufficient to Cure This Conflict

Even if opposing counsel has obtained conflict waivers from all the defendants, such waivers are insufficient to cure the conflict in this case. The Supreme Court in *Wheat* explicitly recognized that courts have discretion to disqualify counsel even where

clients have waived conflicts, particularly where the conflict could impact the integrity of the judicial process. 486 U.S. at 162-63. The Court noted that "the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them." Id. at 163. Moreover, Rule 1.7(b)(3) specifically prohibits representation, even with client consent, when "the representation involves the assertion of a claim by one client against another client represented by the lawyer in the same litigation." While this exact situation may not be present, the underlying principle—that some conflicts are too severe to be waived—applies to the present circumstances.

**F. Disqualification Serves the Public Interest**

Disqualification in this case serves the broader public interest in maintaining the integrity of judicial proceedings. As noted by the Supreme Court in Wheat, courts must be concerned not only with the interests of the parties but also with "the independent interest of the trial judge in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." 486 U.S. at 160. This principle applies with equal force to civil litigation.

The ABA Model Rules of Professional Conduct, upon which Oklahoma's Rules are based, note in the Commentary to Rule 1.7 that "[t]he principle of loyalty to the client imposes substantive limitations on representations involving concurrent conflicts of interest." Maintaining separate counsel for the *Employer and Employee Defendants* would ensure that each defendant receives truly independent representation and would enhance the truth-seeking function of these proceedings.

## G. Precedent in the Northern District of Oklahoma

The Northern District of Oklahoma has previously addressed similar disqualification issues. In *Holden v. Bender*, No. 18-CV-0454-CVE-JFJ, 2019 WL 2355258, at *1 (N.D. Okla. June 4, 2019), the court recognized that disqualification is appropriate when "the attorney's representation of one client may be materially limited by his ethical responsibilities to another client." Additionally, in *Tulsa Litho Co. v. Tile and Decorative Surfaces Magazine Pub., Inc.*, 69 F. Supp. 2d 1355, 1361 (N.D. Okla. 1999), the court emphasized that "the integrity of the judicial system would be subverted" if conflicts of interest were permitted to persist.

Within the Tenth Circuit more broadly, courts have consistently recognized the issues presented by joint representation of entities and individuals. In *Rogers v. Robson, Masters, Ryan, Brumund & Belom*, 392 N.E.2d 1365, 1371 (Ill. App. Ct. 1979), aff'd, 407 N.E.2d 47 (Ill. 1980), a case cited with approval by the Tenth Circuit, the court observed that "attorneys who represent the conflicting interests of both an insurer and its insured assume a very real risk of being caught in an ethical squeeze."

This principle is particularly applicable here, where attorneys are attempting to represent both government agencies/corporations and the individual employees whose interests may diverge substantially as the litigation progresses.

## H. Application of Legal Standards to the Present Case

The application of these legal principles to the specific facts of this case demonstrates the necessity of disqualification:

1. **Government Entity and Individual Conflict**: JOHN K.F. LANGFORD's representation of both CSS of OKDHS and its individual employees (JASON

---

HOENSHELL and EMMALENE STRINGER) creates an inherent conflict because government entities often have immunity defenses not available to individual employees. This precise scenario was addressed in *Johnson v. Bd. of Cty. Comm'rs*, 85 F.3d 489, 493 (10th Cir. 1996), where the court recognized that "because defenses available to a defendant government official sued in his individual capacity differ from those that can be raised by that same defendant in his official capacity, separate representation for the two capacities may be required."

2. **Specific Conflicts in Child Support Enforcement Actions**: The actions of CSS of OKDHS regarding child support enforcement involve potential violations of due process and statutory requirements that may be attributable to either policy decisions by the agency or implementation decisions by individual employees. This creates precisely the type of conflict addressed in *Gen. Elec. Co. v. United States, 41 Fed. Cl.* 384, 393 (1998), where the court noted that when "one client may seek to hold another client responsible... the ethical problems are obvious and generally prohibition of dual representation is appropriate."

3. **Financial Institution and Employee Conflicts**: TARA A. LACLAIR and JENNIFER N. LAMIRAND's concurrent representation of CHARLES SCHWAB AND CO., INC. and MARY JOHNMEYER creates conflicts analogous to those identified in *In re Oracle Sec. Litig*., 829 F. Supp. 1176, 1188 (N.D. Cal. 1993), where the court recognized that "when a lawyer represents both a company and its officers, 'ethical problems may arise where the interests of the corporate client and the individual begin to diverge.'"

4. **Federal Financial Institution Regulations**: CHARLES SCHWAB AND CO., INC.,

as a financial institution, is subject to specific regulatory requirements regarding asset seizure and child support enforcement under **42 U.S.C. § 666(a)(17)** and related federal regulations. Compliance or non-compliance with these regulations may be attributed to either corporate policy or individual employee actions, creating conflicts in representation that have been recognized as problematic in *United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991), where the court noted that "an attorney who cross-examines former clients inherently encounters divided loyalties."

5. **Specialized Conflict in Administrative Law Contexts**: This case involves administrative actions by CSS of OKDHS and compliance by CHARLES SCHWAB AND CO., INC. with administrative directives and federal laws violations and constitutional rights violations. The Tenth Circuit has specifically addressed conflicts in administrative contexts in *Aviles v. U.S.*, 887 F.2d 1046, 1048 (10th Cir. 1989), noting that in such cases, "<u>a conflict of interest is created by a defendant's assertion that his acts were authorized versus the government defendant's assertion that they were not.</u>"

**I. Additional Legal Authority Supporting Disqualification**

1. **Fiduciary Duty Conflicts**: In *Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979), the court recognized that "an attorney's obligations to maintain the confidences of one client and to represent another zealously create a genuine conflict." This principle is particularly relevant when an attorney represents both a corporation or agency and its individual officers or employees.

2. **Tenth Circuit Precedent**: The Tenth Circuit, which includes the Northern District of Oklahoma, has recognized the importance of avoiding conflicts of interest in *SLC*

*Ltd. V. v. Bradford Grp. Inc.*, 999 F.2d 464, 467 (10th Cir. 1993), stating that "when an attorney's representation of one client is directly adverse to another client, an actual conflict exists."

3. **Oklahoma Ethics Opinions**: Oklahoma Bar Association Ethics Opinion No. 309 (1994) specifically addresses conflicts in representing organizations and their constituents, noting that "a lawyer who represents both an organization and one or more of its constituents in the same matter has a concurrent conflict of interest" that requires extensive analysis and often separate counsel.

4. **Duty of Undivided Loyalty**: In *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976), the court emphasized that "an attorney must have the absolute and unfettered duty to represent his client; and this duty should not be fettered by even the remotest possibility of being required to divide his loyalties between different interests." This principle is particularly important in the present case where multiple parties with potentially divergent interests are represented by the same counsel.

5. **Tenth Circuit's Test for Disqualification**: In *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1476 (D. Utah 1994), the court articulated the standard for disqualification in the Tenth Circuit as requiring "a clear showing that continued representation would be impermissible," and noted that "[d]isqualification is appropriate when an attorney's representation of a client may be materially limited by the attorney's own interests or by the attorney's responsibilities to another client." The current conflicted representation meets this standard.

6. **Duty to Avoid the Appearance of Impropriety**: Canon 9 of the Model Code of

---

<u>Professional Responsibility</u>, which has been incorporated into <u>Oklahoma's ethical framework</u>, emphasizes that ***attorneys should avoid even the appearance of impropriety***. The current representation arrangement creates precisely such an appearance by suggesting coordination and information-sharing between parties whose interests may actually diverge.

7. **Constitutional Dimensions**: The Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980), recognized that conflicts of interest in representation can rise to the level of constitutional concerns. While Cuyler addressed criminal representation, the principle that all litigants deserve conflict-free representation applies with equal force in civil matters, particularly those involving government entities and fundamental rights.

## IV. CONCLUSION AND RELIEF SOUGHT

The foregoing Memorandum of Law demonstrates that the current representation arrangements violate Rule 1.7 of the Oklahoma Rules of Professional Conduct, principles of equity, commercial law, and trust law, as well as substantial case precedent from the Supreme Court, the Tenth Circuit, and this District. These conflicts threaten both the rights of the parties and the integrity of the judicial process itself.

For these reasons, i, Linh Tran Stephens, a living woman, sui juris, respectfully request that this Honorable Court, in the interest of truth, equity, and justice, enter an Order:

1. Disqualifying JOHN K.F. LANGFORD from representing CSS of OKDHS, JASON HOENSHELL, and EMMALENE STRINGER concurrently;

2. Disqualifying TARA A. LACLAIR and JENNIFER N. LAMIRAND from representing

both CHARLES SCHWAB AND CO., INC. and MARY JOHNMEYER concurrently;

3.  Requiring each of these Defendants to obtain separate counsel to ensure the integrity of these proceedings;

4.  Setting a reasonable timeframe for securing separate counsel;

5.  Granting any other relief this Honorable Court deems just and proper according to the principles of equity, common law, and commercial code.

## V. REQUEST FOR RULE 11 SANCTIONS

In addition to the relief sought above regarding disqualification, i respectfully request this Honorable Court impose appropriate sanctions pursuant to Federal Rule of Civil Procedure 11 and the Court's inherent authority against Defendants counsel for submitting pleadings containing misrepresentations, factual contentions without evidentiary support, and legal arguments intended to mislead this Court.

### A. Legal Authority for Sanctions

The Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) affirmed that courts possess inherent authority to sanction bad-faith conduct in litigation. Rule 11(b) of the Federal Rules of Civil Procedure further requires that by presenting a pleading, motion, or other paper to the court, an attorney certifies that:

1.  It is not being presented for any improper purpose;

2.  The legal contentions are warranted by existing law or a nonfrivolous argument for changing the law;

3.  The factual contentions have evidentiary support or will likely have evidentiary support after investigation; and

4.  The denials of factual contentions are warranted on the evidence.

**B. Basis for Rule 11 Sanctions in This Case**

Defendants' Answers and other pleadings contain demonstrably false statements contradicted by the record, including:

1.  Mischaracterizations of my status and standing as a living woman with unalienable rights;

2.  False assertions regarding the lawfulness of the child support enforcement actions taken against my financial accounts, when the record clearly demonstrates proper procedures were not followed;

3.  Contradictory statements regarding the authority and responsibilities of various Defendants, designed to shield each from liability by pointing to others;

4.  Fallacious procedural arguments designed to shield constitutional violations from review; and

5.  Deliberate misinterpretations of applicable law regarding financial institution reporting and asset seizure requirements.

These pleadings violate counsel's duty of candor toward the tribunal as required by <u>Rule 3.3 of the Oklahoma Rules of Professional Conduct</u> and warrant sanctions to deter such conduct and preserve judicial integrity.

**C. Appropriate Sanctions**

Appropriate sanctions may include:

1.  Requiring counsel to correct misrepresentations with detailed affidavits with autographs and notarized;

2.  Monetary penalties sufficient to deter repetition of such conduct;

3.  Referral to the appropriate disciplinary authority; and/or

---

4.  Any other sanctions this Court deems just and proper.

As noted in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), the purpose of

Rule 11 sanctions is to "deter baseless filings in district court" and streamline the

administration of justice. The conduct of Defendants' counsel in this matter undermines

these important objectives and warrants intervention by this Court.

### Avouchment / Verification

i hereby declare, verify, certify and affirm, pursuant to the penalties of perjury under the laws of the united states of America, and by the provision of **28 U.S. Code § 1746** that i am of sound mind and competent to make this verification, and that all of the above and foregoing representations are true and correct to the best of my knowledge, information, belief.

Executed in Tulsa County, republic land of Oklahoma on this 15th day of April in the Year of Our Lord Two Thousand and Twenty Five.

*Nemo me impune lacessit pursuant to Psalm 105:15 + Isaiah 54:17*
PRIVATE; THIS IS NOT A PUBLIC COMMUNICATION
Notice to Agent is Notice to Principal, Notice to Principal is Notice to Agent, Notice applies to all successors and assigns; Affidavit is a Form of Evidence; Unrebutted Affidavit Stands as Truth in Commerce;
**Silence is Tacit Acquiescence/Agreement/Dishonor**;
*This communication is in no way forming a contract nor requesting any contracting; it is simply a notice regarding the matters at hand. This communication is not intended to nor does it create nor confirm any professional-client relationship or any type of relationship between us;*

Private sector autograph;
**WITHOUT RECOURSE**

*without prejudice*
*linh-tran: stephens/Agent*

By one–and–only beneficiary:
All Rights Reserved None Waived, **Without Prejudice *UCC 1-308 & 1-103***, **Non-Assumpsit**, one-and-only Grantor & Authorized Agent & Beneficiary for LINH TRAN STEPHENS® ens legis and all its derivatives thereof including Cestui Que Trust a.k.a. "Fide Commissary Trust", sui juris, Ambassador of Messiah Yahusha, Heir of the Creator, my heir/offspring is G.L.Stephens, A natural living woman breathing with a living soul and the Holy Spirit of Creator YAHUAH, natural people with hands legs, Alive-on-the-land, Plenary mind body soul/spirit, unlimited, non-incorporated, non-sole-proprietor, **stateless "freeman of the Union"** per Honorable Mr. Justice MILLER on April 14th, 1983, in the Slaughter-House cases, 83 US 36 (a SCOTUS case specifically mentioned in 8 FAM 102.3), full capacity and competency with postgraduate level of education past medical school, living on the land of the republic, with God-given rights pursuant to the Bills of Rights,

NOT a "pro se"/"person"/"pauper"/"indigent"/"slave"/"public servant"/"government employee"/"ward of State"/"U.S. citizen"/"minor" in your dictionary; i reject your 12 legal presumptions, other presumptions/assumptions/double-speaking/implied or undisclosed contracts; Article IV Section 2 Citizens of each State shall be entitled to all Privileges & Immunities of Citizens in several States; **Rural Free Delivery, Non-Domestic 00000,** in care of 11063 S Memorial Dr Ste D #235, Tulsa, Oklahoma [zip exempt, near 74133] without USDC, Email: LinhStephens7@gmail.com

## Notary as JURAT CERTIFICATE

STATE OF <u>MINNESOTA</u>              )
                                      ) *ss*
COUNTY OF <u>SHERBURNE</u>        )

On this <u>15</u><sup>th</sup> day of <u>April</u>, 20<u>25</u> before me, <u>Melissa K. Vagle</u>, a Notary Public, personally appeared a living woman <u>Linh Tran Stephens</u> (the Authorized Representative and Beneficiary for Legal Fiction LINH TRAN STEPHENS), who electronically (remotely) proved to me on the basis satisfactory evidence to be the woman whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her autograph on the instrument the woman executed, the instrument.

i certify under PENALTY OF PERJURY under the lawful laws of Minnesota State and that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Melissa K. Vagle*

Signature of Notary/Jurat

MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of April, 2025, a true, correct, and exact copy of the above and foregoing instrument was electronically transmitted to the Clerk of the Court via ProSeFilingsOKND@oknd.uscourts.gov for filing and e-servicing because efiling and In Forma Pauperis (IFP) were approved:

1. Defendant #1: CHILD SUPPORT SERVICES OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES (CSS of OKDHS), P.O. Box 27068, Tulsa OK 74149, or Oklahoma Centralized Support Registry, P.O. Box 268849, Oklahoma City, OK 73126; Tel: 405-522-2273; email: OCSS.contact.TulsaEast@okdhs.org
2. Defendant #2: CHARLES SCHWAB AND CO., INC., 3000 Schwab Way, Westlake, TX 76262; Tel: 1800-435-4000; email: TPLPLevy@schwab.com
3. Defendant #3: Cierra Freeman, an individual in her personal capacity, and in official capacity as court-appointed attorney for child support enforcement, Boeheim Freeman Law, 616 S Boston Ave, Suite 307, Tulsa OK 74119; Tel: 918-884-7791; email: cfreeman@boeheimfreeman.com
4. Defendant #4: Mary Johnmeyer, an individual in her personal capacity, and in official capacity as legal counsel of Charles Schwab and Co., Inc.; 3000 Schwab Way, Westlake, TX 76262; Tel: 800-435-4000; email: TPLPLevy@schwab.com
5. Defendant #5: Renee Banks, an individual in her personal capacity, and in official capacity as CSS Director, PO Box 248822, Oklahoma City, OK 73124; Tel: 918-295-3500; email: renee.banks@okdhs.org
6. Defendant #6: Jason Hoenshell, an individual in his personal capacity, and in official capacity as Oklahoma FIDM Coordinator, PO Box 248822, Oklahoma City, OK 73124; Tel: 405-982-1530; email: jason.hoenshell@okdhs.org
7. Defendant #7: Emmalene Stringer, an individual in her personal capacity, and in official capacity as State's Attorney for CSS, 3666 N Peoria Ave, Tulsa, OK 74106, or PO BOX 27068, Tulsa, OK 74149; Tel: 918-295-3500, Fax: 918-430-2364, email: emmalene.stringer@okdhs.org and OCSS.contact.TulsaEast@okdhs.org

Defendants' current lawyers are

1. John K.F. Langford Oklahoma Department of Human Services P.O. Box 25352 Oklahoma City, OK 73125-0000 john.langford@okdhs.org
2. Daniel James Card Oklahoma Department of Human Services Legal P.O. Box 25352 Oklahoma City, OK 73125 daniel.card@okdhs.org
3. Tara A. LaClair Bressler, Amery & Ross, P.C. 6608 N. Western Avenue, Suite 1213 Oklahoma City, OK 73116 tlaclair@bressler.com
4. Jennifer N. Lamirand Bressler, Amery & Ross, P.C. 6608 N. Western Ave. #1213 Oklahoma City, OK 73116 jlamirand@bressler.com
5. Andrew Charles Jayne Baum Glass Jayne Carwile & Peters PLLC 401 S. Boston Avenue, Ste 2000 Tulsa, OK 74103 ajayne@bgjclaw.com

*without prejudice*
*linh-tran: stephens/Agent*

WITHOUT RECOURSE
By: Linh-Tran: of the family Stephens/Agent